Solomon WILSON, Petitioner,

v.

Dennis BRESLIN, Superintendent of Arthur Kill Correctional Facility, Respondent.

Nos. 01–CV–1719(JBW), 03–MISC–0066(JBW), 94–A–6803.

United States District Court, E.D. New York.

June 16, 2003.

Nicoletta J. Caferri, District Attorney, Kew Gardens, NY, Brian Marc Stettin, New York State Law Department, New York City, for Defendant.

## JUDGMENT & ORDER

WEINSTEIN, Senior District Judge.

The petition for a writ of habeas corpus is denied. No hearing on this matter is necessary. This memorandum briefly addresses petitioner's claims.

## I. Facts and Procedural History

Petitioner was arrested after allegedly selling narcotics to an undercover police officer. Evidence of petitioner's guilt presented at trial included the testimony of the undercover officer that the undercover officer approached a man on a street corner, indicating that he was looking to buy narcotics. The man told the officer he had a friend down the block who could help him. The undercover was directed to petitioner, who on request sold the officer powder and rock cocaine in two pink, transparent bags. In doing so, petitioner displayed about fifteen to twenty such bags. In exchange for the narcotics, the officer handed petitioner ten dollars of pre-marked "buy money." The undercover then left petitioner. The undercover officer

signaled to the "ghost" undercover officer—who was observing the buying undercover's movements—that a purchase had been made. Members of the undercover team then approached petitioner and searched him, finding the ten dollars in premarked money. About five minutes after the initial transaction had been completed, the buying undercover officer drove by the scene and identified petitioner as the seller.

The jury found petitioner guilty of third degree criminal sale of a controlled substance. Petitioner was sentenced, as a second felony offender, to 10 to 20 years in prison. Petitioner's conviction and sentence were affirmed on appeal by the Appellate Division. Leave to appeal to the New York Court of Appeals was denied. Petitioner filed a pro se motion to vacate judgment that was denied by the trial court. Leave to appeal to the Appellate Division was denied.

In the instant application for a writ of habeas corpus, petitioner claims (1) that the verdict was against the weight of the evidence; (2) that the court's pretrial ruling that the prosecution could question petitioner about prior convictions deprived him of the right to testify in his own defense; (3) that the trial court committed reversible error by instructing the jury, without a request from the defense, that they should draw no negative inference from petitioner's failure to testify; (4) that the trial court committed reversible error by closing the courtroom for the undercover officer's testimony; (5) that petitioner was denied effective assistance of trial counsel due to counsel's failure to move to dismiss the indictment on the ground that petitioner was not allowed to testify before the grand jury; and (6) that he was deprived of counsel at material stages of the proceedings. All claims are exhausted.

## II. AEDPA

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court may grant a writ of habeas corpus to a state prisoner on a claim that was "adjudicated on the merits" in state court only if it concludes that the adjudication of the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable ap-

plication of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

■ An "adjudication on the merits" is a "substantive, rather than a procedural, resolution of a federal claim." *Sellan v. Kuhlman*, 261 F.3d 303, 313 (2d Cir.2001) (quoting *Aycox v. Lytle*, 196 F.3d 1174, 1178 (10th Cir.1999)). Under the "contrary to" clause, "a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000) (O'Connor, J., concurring and writing for the majority in this part). Under the "unreasonable application" clause, "a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413, 120 S.Ct. 1495. "[F]ederal law, as determined by the Supreme Court, may as much be a generalized standard that must be followed, as a bright-line rule designed to effectuate such a standard in a particular context." *Overton v. Newton*, 295 F.3d 270, 278 (2d Cir.2002). Determination of factual issues made by a state court "shall be presumed to be correct," and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

### III. Exhaustion

In the past, a state prisoner's federal habeas petition had to be dismissed if the prisoner did not exhaust available state remedies as to any of his federal claims. *See Rose v. Lundy*, 455 U.S. 509, 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). "This exhaustion requirement is ... grounded in principles of comity; in a federal system, the States should have the first opportunity to address

and correct alleged violations of [a] state prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). The exhaustion requirement requires the petitioner to have presented to the state court "both the factual and legal premises of the claim he asserts in federal court." *Daye v. Attorney General*, 696 F.2d 186, 191 (2d Cir.1982) (en banc).

■ Pursuant to AEDPA, a district court may now, in its discretion, *deny* on the merits habeas petitions containing unexhausted claims—so-called "mixed petitions." *See* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the state."). In addition, the state may waive the exhaustion requirement, but a "State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." *Id.* § 2254(b)(3); *see also Ramos v. Keane*, No. 98 CIV. 1604, 2000 WL 12142, at *2, 2000 U.S. Dist. LEXIS 101, at *10 (S.D.N.Y.2000) (state's failure to raise exhaustion requirement does not waive the issue).

### IV. Procedural Bar

A federal habeas court may not review a state prisoner's federal claims if those claims were defaulted in state court pursuant to an independent and adequate state procedural rule, "unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. 2546.

■ If a state court holding contains a plain statement that a claim is procedurally barred then the federal habeas court may not review it, even if the state court also rejected the claim on the merits in the alternative. *See Harris v. Reed*, 489 U.S. 255, 264 n. 10, 109 S.Ct. 1038, 103 L.Ed.2d 308 (1989) ("a state court need not fear reaching the merits of a federal claim in an *alternative* holding"

so long as it explicitly invokes a state procedural rule as a separate basis for its decision).

■ When a state court "uses language such as 'the defendant's remaining contentions are either unpreserved for appellate review or without merit,' the validity of the claim is preserved and is subject to federal review." *Fama v. Comm'r of Corr. Svcs.*, 235 F.3d 804, 810 (2d Cir.2000). When a state court "says that a claim is 'not preserved for appellate review' and then ruled 'in any event' on the merits, such a claim is not preserved." *Glenn v. Bartlett*, 98 F.3d 721, 724–25 (2d Cir.1996).

## V. Ineffective Assistance of Counsel

■ The Counsel Clause of the Sixth Amendment provides that a criminal defendant "shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. This right to counsel is "the right to *effective* assistance of counsel." *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970) (emphasis added). The Supreme Court has explained that in giving meaning to this requirement we must be guided by its purpose—"to ensure a fair trial"—and that therefore the "benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In order to prevail on a Sixth Amendment claim, a petitioner must prove both that counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms," *id.* at 688, 104 S.Ct. 2052, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694, 104 S.Ct. 2052. *See also United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002). A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052.

■ The performance and prejudice prongs of *Strickland* may be addressed in either order, and "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed." *Id.* at 697, 104 S.Ct. 2052. In evaluating the prejudice suffered by a petitioner as a result of counsel's deficient performance, the court looks to the "cumulative weight of error" in order to determine whether the prejudice "reache[s] the constitutional threshold." *Lindstadt v. Keane*, 239 F.3d 191, 202 (2d Cir.2001). The court must also keep in mind that "a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Strickland*, 466 U.S. at 696, 104 S.Ct. 2052. "The result of a [criminal] proceeding can be rendered unreliable, and hence the proceeding itself unfair, even if the errors of counsel cannot be shown by a preponderance of the evidence to have determined the outcome." *Purdy v. Zeldes*, 337 F.3d 253, 259, 2003 WL 253144, at *6 (2d Cir.2003) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). Ineffective assistance may be demonstrated where counsel performs competently in some respects but not in others. *See Eze v. Senkowski*, 321 F.3d 110, 111 (2d Cir.2003).

As a general matter, strategic choices made by counsel after a thorough investigation of the facts and law are "virtually unchallengeable," though strategic choices "made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91, 104 S.Ct. 2052. Counsel, in other words, "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Id.* at 691, 104 S.Ct. 2052. Where counsel fails to make a reasonable investigation that is reasonably necessary to the defense, a court must conclude that the decision not to call an expert cannot have been based on strategic considerations and will thus be subject to review under *Strickland's* prejudice prong. *See Pavel v. Hollins*, 261 F.3d 210, 223 (2d Cir.2001) (counsel

ineffective in a child sexual abuse case where his failure to call a medical expert was based on an insufficient investigation); *Lindstadt,* 239 F.3d at 201 (same). The Court of Appeals for the Second Circuit has recently gone so far as to imply that all of counsel's significant trial decisions must be justified by a sound strategy—a significant raising of the bar that would appear to require an unrealistic degree of perfection in counsel. *See Eze,* 321 F.3d at 136 (remanding to district court for factual hearing because it was "unable to assess with confidence whether strategic considerations accounted for ... counsel's decisions").

There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. 2052.

■ Each factual claim made in support of an allegation of ineffective assistance of counsel must be fairly presented to a state court before a federal habeas court may rule upon it. *See Rodriguez v. Hoke,* 928 F.2d 534, 538 (2d Cir.1991) (dismissing petition as unexhausted where petitioner's claim of ineffective assistance of counsel alleged more deficiencies before the habeas court than were presented to the state court, because "[t]he state courts should have been given the opportunity to consider all the circumstances and the cumulative effect of all the claims as a whole" (quotation omitted)). Where an additional factual claim in support of the ineffective-assistance allegation merely "supplements" the ineffectiveness claim and does not "fundamentally alter" it, dismissal is not required. *Caballero v. Keane,* 42 F.3d 738, 741 (2d Cir.1994).

### VI. Certificate of Appealability

This opinion complies with *Miranda v. Bennett,* 322 F.3d 171, 175–77 (2d Cir.2003), and Rule 52 of the Federal Rules of Civil Procedure. No other issue open to consideration by this court has merit. *See Sumner v. Mata,* 449 U.S. 539, 548, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981) ("a court need not elaborate or give reasons for rejecting claims which it regards as frivolous or totally without merit"). ·

■ A certificate of appealability may be granted with respect to any one of petitioner's claims only if petitioner can make a substantial showing of the denial of a constitutional right. Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

### VII. Analysis of Claims

■ Petitioner first claims that the verdict was against the weight of the evidence. In particular, petitioner states that the undercover officers did not memorialize their descriptions of the seller prior to petitioner's arrest; that the arresting officer did not witness the transaction; that the seller was described as wearing a green army jacket while petitioner was wearing a "multi-colored" camouflage jacket; that no mention was made of his facial hair or a scar; that the arresting officer's paperwork states that twenty dollars in buy money was recovered while at trial only ten was presented; and that the buying undercover officer claimed to observe a large quantity of drugs on petitioner but that no drugs were recovered on arrest.

The relevant question for this court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Petitioner "bears a very heavy burden" when challenging the legal sufficiency of the evidence in a state criminal conviction. *Einaugler v. Supreme Court,* 109 F.3d 836, 840 (2d Cir.1997). From the cold transcript, the officers' testimony concerning the encounter with petitioner was credible. The jury could reasonably have believed their testimony, including their testimony that a clerical error was responsible for indications in paperwork that twenty dollars in buy money rather than ten dollars was recovered from petitioner. Petitioner was, at any rate, found with prerecorded money on him. Petitioner had ample opportunity at trial to argue that police had arrested the wrong person, as evidenced by an inexact description of the seller and the fact that he had no drugs

in his possession at the time of arrest. The jury did not credit his defense. Habeas relief is not warranted on this ground.

■ Petitioner next claims that the court's pretrial ruling that the prosecution could question petitioner about prior convictions deprived him of the right to testify in his own defense. Because petitioner did not testify at trial, this claim is not cognizable on habeas review. *See Luce v. United States,* 469 U.S. 38, 43, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984) ("to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify"); *Grace v. Artuz,* 258 F.Supp.2d 162, 171–72 (E.D.N.Y.2003) ("petitioner's claim as to the impropriety of the *Sandoval* ruling does not raise a constitutional issue cognizable on habeas review").

■ Petitioner next claims that the trial court committed reversible error by instructing the jury, without a request from the defense, that they should draw no negative inference from petitioner's failure to testify. The instruction was not error. Petitioner can demonstrate no harm from the instruction, which was intended to protect his rights. Habeas relief is not warranted on this ground.

■ Petitioner next claims that he was denied his constitutional right to a public trial when the trial court closed the courtroom during the testimony of an undercover police officer. The claim was deemed procedurally barred by the Appellate Division when raised on direct appeal because it was not preserved for appellate review. Review of the claim is barred in this court because the state court denied petitioner's claim on an adequate and independent state procedural ground.

■ At any rate, the claim is without merit. The Sixth and Fourteenth Amendments guarantee an accused criminal a right to a public trial. "The requirement of a public trial is for the benefit of the accused; that the public may see he is fairly dealt with and not unjustly condemned, and that the presence of interested spectators may keep his triers keenly alive to a sense of their responsibility and to the importance of their functions.... In addition to ensuring that judge and prosecutor carry out their duties responsibly, a public trial encourages witnesses to come forward and discourages perjury." *Waller v. Georgia,* 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (quotation and footnotes omitted). The right to a public trial is not absolute, however, and it may be limited under appropriate circumstances. Before allowing a courtroom to be closed, the trial court must, *inter alia,* find an "overriding interest" that is likely to be prejudiced in the absence of closure. *Waller,* 467 U.S. at 48, 104 S.Ct. 2210 (1984). But where the courtroom is to be only partially closed a movant need only demonstrate a "substantial reason" to justify the closure. *Woods v. Kuhlmann,* 977 F.2d 74, 76 (2d Cir.1992) ("a less stringent standard [is] justified because a partial closure does not implicate the same secrecy and fairness concerns that a total closure does"); *see also Bobb v. Senkowski,* 196 F.3d 350 (2d Cir.1999).

■ The Appellate Division found, in reviewing the merits of the claim in its alternative holding, the following:

[B]ased on the evidence adduced at the Hinton hearing, closure of the courtroom was proper (see, *People v. Hinton,* 31 N.Y.2d 71, [334 N.Y.S.2d 885, 286 N.E.2d 265,] *cert denied* 410 U.S. 911[, 93 S.Ct. 970, 35 L.Ed.2d 273]). Both officers testified that they continued to work in the same geographical area involved in this case, were engaged in ongoing investigations in the area, had lost subjects in the area, and had previously received threats from drug sellers stemming from their undercover work. One officer stated that he had entered the courthouse through a private entrance. Thus, the proof established that the safety and effectiveness of the officers constituted an overriding interest which would likely be prejudiced in the absence of closure.

*People v. Wilson,* 251 A.D.2d 688, 676 N.Y.S.2d 476, 476–77 (1998) (citations omitted). This conclusion was reasonable. There was no constitutional violation. No habeas relief is merited on this ground.

■ Petitioner also claims that he was denied effective assistance of trial counsel due to counsel's failure to move to dismiss the indictment on the ground that petitioner was not allowed to testify before the grand jury. Petitioner was given notice of the date

for which a grand jury proceeding against him was scheduled. *See* Dec. 13, 1993 Minutes of Arraignment, at 2. On the date the grand jury was to convene, petitioner was asked by the court whether he intended to testify before the grand jury. The assistant district attorney replied that he had spoken with petitioner the previous day and had been told by petitioner that because he was out on bail he would not testify before the grand jury. Petitioner did not disagree. *See* Dec. 17, 1993 Proceedings, at 3. Petitioner was not denied his state court right to testify before a grand jury, and trial counsel was therefore not ineffective for failing to raise this claim before the trial court. Habeas relief is not warranted on this ground. The evidence of guilt at trial made irrelevant whatever grand jury error existed.

■■■■ Petitioner finally claims that he was deprived of counsel at material stages of the proceedings. Contrary to respondent's contention, this claim is exhausted because it was raised in a motion to vacate judgment, and petitioner sought leave to appeal that decision to the Appellate Division. The claim was, however, denied on procedural grounds by the trial court because petitioner could have raised the claim on direct appeal. Review of the claim by this court is therefore barred.

■■ At any rate, the claim is without merit. Petitioner's claim stems from the unusual decision of the arraignment court to deny petitioner appointed counsel at the state's expense after the court learned that petitioner's family had posted $5000 bail for petitioner. Petitioner himself was penurious, and the bail money was achieved by placing the house of petitioner's mother as collateral. Had petitioner truly been subjected to any material proceedings absent the benefit of counsel, a constitutional violation might well have occurred. There was no such violation in the present case.

The arraignment court, after making its decision, instructed petitioner to retain counsel on his own. Assigned counsel was ordered to return to court each day until petitioner had done so. *See* Dec. 16, 1993 Proceedings, at 2–3. In the meantime, the court did not excuse petitioner's court-appointed attorney. The court-appointed at-

torney was present with petitioner at all hearings before the arraigning court, and was ordered to be available to assist petitioner at the grand jury proceedings should petitioner choose to testify. When petitioner was arraigned again prior to trial, the court then assigned him counsel. In short, petitioner was at no point subjected to the vagaries of the legal system unrepresented. Habeas relief is not warranted on this ground.

VIII. Conclusion

The petition for a writ of habeas corpus is denied.

No certificate of appealability is granted with respect to any of petitioner's claims, petitioner having made no substantial showing of the denial of a constitutional right. Petitioner has a right to seek a certificate of appealability from the Court of Appeals for the Second Circuit. *See* 28 U.S.C. § 2253; *Miller–El v. Cockrell,* 537 U.S. 322, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003).

SO ORDERED.